UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                                Case No. 08-32314-DHW
                                                     Chapter 13
CAROLINE A. GRAY,

    Debtor.

CAROLINE A. GRAY,

    Plaintiff.                          Adv. Proc. No. 11-03056

v.

LVNV FUNDING, LLC
NORTHLAND GROUP, INC.

    Defendants.

## MEMORANDUM OPINION

Caroline A. Gray brought this adversary proceeding alleging that Northland Group, Inc. ("Northland"), on behalf of LVNV Funding, Inc. ("LVNV"), willfully violated the 11 U.S.C. § 362 automatic stay by sending seven collections letters with actual or, in the alternative, imputed knowledge of her bankruptcy.[1] The court held an evidentiary hearing in this matter on February 19, 2013. For the following reasons, judgment will enter in favor of the defendants.

### Jurisdiction

The court's jurisdiction in this adversary proceeding derives from 28 U.S.C. § 1334 and from an order of the United States District Court for this district wherein that court's jurisdiction in title 11 matters was

---

[1] The debtor also alleged that the defendants violated 15 U.S.C. § 1692(f)(1) of the Fair Debt Collection Practices Act ("FDCPA") by attempting to collect a debt not permitted by law. This claim is subsumed by the debtor's stay violation claim and will not be analyzed separately.

referred to the Bankruptcy Court. *See* General Order of Reference [of] Bankruptcy Matters (M.D. Ala. April 25, 1985). Further, because this matter concerns an alleged violation of the automatic stay, this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), thereby extending this court's jurisdiction to the entry of a final order or judgment.

Factual Findings

Caroline A. Gray alleges that Northland, a collection agency operating on behalf of LVNV, sent seven letters to collect a debt that was listed on her bankruptcy schedules. While Northland does not deny sending the letters, both Northland and LVNV dispute having knowledge or notice of this debtor's filing. LVNV and Northland point to errors in account identifiers and deficient information in the debtor's bankruptcy schedules to explain why their procedures failed to detect her case.

LVNV is in the business of purchasing non-performing debts. Shortly after purchase, LVNV assigns each account to a collection agency for recoupment. LVNV purchased the debtor's Casual Corner/GE MoneyBank account, ending in 9736, in early 2009. While there is no dispute that the Casual Corner account at issue belonged to this debtor, both the name and social security number on file were wrong. According to the information LVNV received from the original creditor, the account belonged to Caroline C. Gray, social security number xxx-xx-1337. (Def. Ex. 6). This debtor's name is Caroline *A*. Gray and her social security number is xxx-xx-7511.

Before referring any account for collection, LVNV "scrubs" each one for inclusion in bankruptcy. LVNV checks the name and social security number on every account against a national bankruptcy database to avoid collecting from bankrupt debtors. Even after an account comes up collectible and LVNV refers it to a collection agency, LVNV continues to perform daily "scrubs" to check for subsequent filings.

LVNV "scrubbed" the debtor's Casual Corner account immediately upon receipt in January 2009. Although Mrs. Gray was already in bankruptcy at that time, the Casual Corner account raised no red flags; LVNV was running a name and social security number that did not belong to a debtor in bankruptcy. Further, when Mrs. Gray filled out her

bankruptcy schedules, she listed a debt to GE Money Bank but she did not include an account number nor did she reference Casual Corner or LVNV. LVNV did not receive notice from the court of this debtor's bankruptcy in relation to the Casual Corner account and consequently, LVNV did not file a proof of claim for that debt.

LVNV did file a proof of claim, claim #4, in the debtor's case. When she initiated this lawsuit, Ms. Gray alleged that Northland sent the violative letters to collect on claim #4. Ms. Gray also alleged that she listed the Causal Corner account on her Schedule F and included LVNV and Northland as representatives of the initial creditor, Citibank. (Compl. ¶ 15). At trial, the defendants demonstrated that neither claim #4 nor the listing on Schedule F reference the account at issue. Rather, both items are connected to a different account entirely. LVNV owned two delinquent accounts belonging to this debtor; one was for the Casual Corner card and the other was for a BP/Amoco card.

LVNV purchased the BP/Amoco account linked to Caroline A. Gray, social security number xxx-xx-7511—the correct information—back in 2006. They placed the account in active collection because Mrs. Gray was not in bankruptcy at that time, but they continued to perform daily "scrubs". Within days of her filing, and prior to receiving only notice from the court, LVNV uncovered the debtor's bankruptcy, recalled the account and immediately ceased all collection efforts. At trial, the debtor conceded that she had confused the Casual Corner Account and the BP account in her initial pleading and that there were no post-petition efforts to collect the BP account where her name and social security were listed accurately.

The only violations alleged by the debtor pertain to the account with the wrong information. For that reason, and for the others detailed above, LVNV and Northalnd's "scrubs" was unable to detect Mrs. Gray's bankruptcy. As such, in September 2009, LVNV referred the account to a collection agency called Capital Management Services ("CMS"). On December 13, 2009, CMS sent a collection letter to the debtor. Knowing that the automatic stay prohibited collection efforts, Mrs. Gray turned the letter over to her bankruptcy attorney, Earl Gillian, Jr. In February 2010, Mr. Gillian wrote to CMS informing them of the debtor's bankruptcy. (Pl. Ex. G). The debtor did not call any witnesses from CMS

to testify whether CMS received the letter, whether they recorded it, or whether they alerted LVNV. No one from CMS testified as to the standard procedures for handling a letter such as Mr. Gillian's, nor did any witness shed light on the nature of the relationship or the contractual arrangement between CMS and LVNV.

LVNV recalled the Casual Corner account from CMS in September 2010 and referred it to Northland that same month. LVNV and Northland both continued to "scrub" the account each day but were never alerted to the debtor's bankruptcy. Between September 2010 and January 2011, Northland sent the seven collection letters at issue in this case.

## CONTENTIONS OF THE PARTIES

The debtor alleges that the defendants received notice and had actual knowledge of her bankruptcy at the time the letters were sent. In the alternative, the debtor contends that the notice contained in Earl Gillian's letter to CMS should be imputed to LVNV because CMS was LVNV's agent. LVNV and Northland argue that they had neither notice nor actual knowledge of Ms. Gray's bankruptcy due to errors and omissions on her part. LVNV further argues that CMS was an independent contractor such that its knowledge cannot be imputed to LVNV.

## DISCUSSION

The filing of a bankruptcy petition operates as a stay of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(6). Actions taken subsequent to a debtor's filing are in violation of the automatic stay irrespective of notice. S*ee Borg-Warner Acceptance Corp. v. Hall,* 685 F.2d 1306 (11th Cir.1982). Further, intentional acts taken against a debtor or property of her bankruptcy estate after a case has been filed and with knowledge of same may be punishable as contempt of court, subjecting the actor to "actual damages, including costs and attorneys' fees" for a willful violation of the automatic stay. *See generally Carver v. Carver,* 954 F.2d 1573 (11th Cir. 1992), *cert denied,* 506 U.S. 986 (1992); *see also Jove Eng'g, Inc. v. Internal Revenue Service,* 92 F.3d 1539, 1555 (11th Cir. 1996).

Here, the defendants violated the automatic by attempting to collect a prepetition debt during the pendency of the debtor's chapter 13 case. However, the defendants contend that their actions were justified because they never received notice of Mrs. Gray's bankruptcy. LVNV and Northland argue that because they lacked knowledge of the debtor's bankruptcy, their violation of the automatic stay was not willful and any imposition of damages would be inappropriate.

In this circuit "willfulness generally connotes intentional action taken with at least callous indifference for the consequences." *Jove Engineering, Inc. v. Internal Revenue Service,* 92 F.3d 1539, 1555 (11th Cir. 1996) (quoting *Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.,* 793 F.2d 1529, 1535 (11th Cir. 1986)). The standard for a willful violation of the automatic stay is met if the defendant has knowledge of the stay and intends the actions which constitute the violation. *Goichman v. Bloom (In re Bloom),* 875 F.2d 224, 227 (9th Cir. 1989). It does not require a specific intent to violate the stay. *Id.* Once notified by the debtor of the bankruptcy filing, a creditor has the responsibility to refrain from violating the stay. *Mitchell Const. Co., Inc. v. Smith (In re Smith),* 180 B.R. 311, 319 (N.D. Ga. 1995).

A debtor, however, must establish a willful violation of the stay by a preponderance of the evidence. *See Spinner v. Cash In Hurry, LLC (In re Spinner),* 398 B.R. 84, 94—95 (N.D. Ga. 2008). In other words, the plaintiff bears the burden of proving that the defendant undertook an act that violated the automatic stay with knowledge of the bankruptcy. Knowledge can be actual or imputed and the debtor alleges that these defendants should be charged with both. *See In re Sissine*, 432 B.R. 879—880 (N.D. Ga. 2010).

ACTUAL KNOWLEDGE

The court finds that LVNV and Northland did not receive notice and of this debtor's bankruptcy and had no actual knowledge of her case.

LVNV and Northland were not listed on the creditor matrix with respect to this claim because the debtor did not include them on her schedules. Neither did she list Casual Corner, the original creditor, or an account number, such that, with reasonable inquiry, these creditors could have connected the dots on their own.

Further, LVNV and Northland presented detailed evidence on the "scrubbing" procedures they undertake precisely to avoid collecting from bankrupt debtors in violation of the automatic stay. The "scrub" only failed in this case because LVNV had the wrong name and social security number for the Casual Corner account. When LVNV was supplied with the correct information, as with debtor's BP/Amoco account, LVNV found Mrs. Gray's bankruptcy within days of her filing. It is the opinion of the Court that LVNV and Northland employ reasonable procedures to avoid violations of the automatic stay and that the violation here was not willful, but rather, was the result of a bona fide error.

## IMPUTED KNOWLEDGE

The Court finds that CMS' knowledge cannot be imputed to LVNV because CMS was not the agent of LVNV. It is an elementary principle of agency law that "both principal and agent are deemed to have notice of whatever either has notice of." *Gowebs v. Tys. S. ex rel. Davis*, 948 So.2d 513, 526 (2006). However, there is no imputation of knowledge between an employer and an independent contractor. *Bevis v. L & L Services*, 360 So.2d 296, 297 (Ala. 1978). Generally, the test for determining whether a person is an agent of another, rather than an independent contractor, is "whether that other person has reserved the right of control over the means and method by which the person's work will be performed". *Alabama Power Co. v. Beam*, 472 So.2d 619 (Ala.1985). Under Alabama law, "in the absence of contract limiting its liability, [a] collection agency is an independent contractor." *Lynch Jewelry Co. v. Bass*, 124 So. 222, 223 (1929). This, of course, is a case-specific inquiry.

At trial, the debtor had an opportunity to present evidence as to the particular nature of the employment arrangement between CMS and LVNV, but she offered none. CMS was not a party to the case. The debtor did not supply the court with the employment contract between CMS and LVNV. She did not depose any CMS employee prior to trial nor did she subpoena any witnesses to testify as to the liability arrangement between CMS and LVNV or whether LVNV retained any significant control over CMS' daily operations.

The debtor argues that LVNV admitted at trial that CMS was its agent. While in court, the debtor's attorney asked Tonya Henderson, the corporate representative for LVNV: "Capital Management Services was your agent for collection of this account in 2009 when they wrote this letter, is that correct?" Ms. Henderson answered affirmatively. On cross-examination, however, defense counsel asked Ms. Henderson if she knew that the word "agent" was a legal term of art. She replied that she did not. Defense counsel specifically followed up: "Do you mean that [CMS] are your dutifully appointed agent and representative such that they are binding you with what they know and what they say; or are they third parties hired to do a job?" Ms. Henderson replied that "they are definitely third parties hired to do a job."

The debtor cannot establish an agency relationship by misleading a layperson into using a legal term of art when she doesn't realize it or understand its import. "The mere [use] of terms such as agent or independent contractor [] does not make them such in law. The surrounding facts and circumstances determine the relationship." *Rust Engineering Co. v. State,* 243 So. 2d 695, 700 (Ala. 1971) citing *United States v. Boyd,* 363 S.W.2d 193, 200 (Tenn. 1962). Here, the surrounding facts and circumstances do not support the debtor's contention of agency.

The only direct evidence in this matter relating to CMS is the collection letter that it sent to the debtor. Therein, CMS clearly states that it is authorized to settle the debt, that it is collecting the account for its current owner, LVNV, and that all communications should be directed to CMS. CMS' letter evidences the relinquishment of control by LVNV to CMS. CMS has been hired to collect the debt and to handle any disputes that arise in the process. If anything, CMS' letter shows that LVNV hired CMS to do a job and then left CMS alone to perform its duties. This is the hallmark of an independent contract relationship. It is the opinion of the court that the debtor has not demonstrated an agency relationship between CMS and LVNV and as such, notice of the bankruptcy to CMS cannot be imputed to LVNV.

## CONCLUSION

For the above reasons, the court finds that the defendants had no knowledge of this debtor's bankruptcy and they did not willfully violate the automatic stay in this case. A judgment in conformity with this Memorandum Opinion will enter separately.

Done this the 14th day of June, 2013.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Nicholas H. Wooten, Plaintiff's Attorney
Neal D. Moore, Defendant's Attorney
Earl Gillian Jr.